## THOMAS *vs.* THOMAS.

1. Actual personal violence, not very great, nor such as standing alone would warrant a decree of separation, when accompanied by inhuman, coarse, and brutal treatment towards the wife, rendering it unjustifiable that she should be compelled to live with her husband, will entitle her to a decree of divorce *a mensa et thoro*, and to alimony.

2. Custody of the children adjudged to the mother.

---

The bill in this case was for a divorce *a mensa et thoro*, on account of extreme cruelty, and for alimony. The cause was heard upon bill, answer, replication, and proofs, on part of the complainant. No proofs were offered on part of the defendant, except by cross-examination of the complainant's witnesses.

*Mr. J. B. Vredenburgh*, for complainant.

*Mr. Dixon*, for the defendant.

THE CHANCELLOR.

The parties were married in 1862, and lived together as man and wife until February, 1869, when the defendant

deserted his wife and lived separate from her. At first he furnished her with sufficient support for her and her two children; but he was making arrangements to leave the state without providing for her support, and she filed a bill for alimony and procured him to be arrested upon a writ of. *ne exeat.* After this he professed to be reconciled to her, and consented to live with her again, if she would discontinue her suit, and leave the house of her parents where they had been boarding, and go to the house where he was boarding. She was anxious to be reconciled, and without consulting her friends or her counsel accepted his terms, discontinued her suit, and went to live with him. In a few weeks he told her that he had laid this trap for her, that he now had her where he wanted her, and that no matter what his conduct toward her might be, she would have to live with him and endure it. Before he deserted her, he had used personal violence to her, and struck her. After this he repeatedly used personal violence to her, once or twice by blows, several times by spitting in her face. He refused to occupy the same room or bed with her, and habitually addressed her as "dirty slut," and used other opprobrious epithets. He told her and her friends repeatedly that he did not love her, and did not want to live with her; that she was too ignorant and uncultivated for him, and was not fit to go into society. He accused her of want of chastity, both before and after marriage. He told her that the child with which she was pregnant was not his. He procured one Campbell to make an affidavit that he had had intercourse with her before marriage; and again procured him to swear to it in this state that she might, if she dared, have him indicted for perjury. When the grand jury had Campbell indicted for libel the defendant intervened; Campbell pleaded *non vult contendere,* was fined $1.00, and the defendant paid the fine, costs, and expenses of the whole matter. Before his desertion, and before the pretended reconciliation, he gave out that he was about to get a divorce, and *some one* caused a notice to be inserted in a newspaper of Jersey City, that he had a divorce.

He afterwards gave out that he was obtaining a divorce for the matter in Campbell's affidavit. He proposed to her to let him get a divorce from her. She received anonymous letters charging him with adultery, and advising her to obtain a divorce; the writer called at her mother's house, and gave the same advice; he refused to give his name, but gave an address in the New York post-office. When he went away he was followed, and was seen to join the defendant, who was waiting on a corner for him, and walked off arm and arm with him.

The actual violence in this case is not very great, not such as, if repeated, would cause danger to life or limb. And in cases where it was committed in a sudden outbreak of passion, such violence or even greater, would not be sufficient to require a separation, unless the circumstances lead to the belief that it would be repeated and continued. But the violence in this case is not alone; nor is it even the worst part of the treatment of the defendant. He has been deliberately guilty of a series of acts of inhuman, coarse, and brutal treatment of his wife, of far greater enormity than the blows inflicted upon her. She may be ignorant, unrefined, and passionate (though there is no proof of either), but still she is his wedded wife, and the mother of his children. He is bound to support her, and live with her; but she cannot claim support from him unless she is willing to live with him, or has support adjudged to her on a judicial separation.

Surely, no woman should be compelled to live with a husband and endure such treatment as this defendant has inflicted on his wife. And if it was the established doctrine that there must be actual personal violence, and reason to apprehend it in future, to justify a divorce for extreme cruelty, both exist in this case. There must be a decree of divorce a mensa et thoro, the custody of the children must remain with the mother, and it must be referred to a master to ascertain and report what is the proper alimony to be made to the complainant for her support, and that of her two children.